IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NANCY BLIESE,

    Plaintiff,

v.

CREDIT BUREAU OF UKIAH, INC.,

    Defendant.

No. C 11-04122 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is defendant's motion for summary judgment. Plaintiff has filed an opposition to which defendant has replied. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument and VACATES the hearing currently scheduled for April 19, 2013. Having considered the parties' arguments, the Court hereby GRANTS defendant's motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

This dispute arises from defendant's efforts to collect a debt owed by plaintiff, Nancy Bliese, and her husband, Karl Bliese. Plaintiff and her husband incurred part of the debt from plaintiff's one-day emergency room visit in June 2009. Deposition of Nancy Bliese, Opp'n, Ex. B ("Nancy Bliese Deposition") at 11, 16. The other portion came from another medical treatment of plaintiff. Melissa Burke Decl. in Supp. of Def.'s Motion ("Burke Decl.") ¶ 5. The medical centers that treated plaintiff

assigned the debts to defendant, the Credit Bureau of Ukiah ("CBU"), in April and October 2010. *Id.* In between April 2010 and the filing of this suit in August 2011, defendant placed phone calls to plaintiff and her husband twenty-one times to try to collect on the debt. *Id.* ¶ 7. The parties disagree on whether plaintiff and her husband were making regular payments towards the debt: Plaintiff submits that they were paying $200 a month. Bliese Deposition at 31 ¶ 7. But defendant submits that plaintiff had only "made a couple of small sporadic payments towards the debt . . . ." Burke Decl. ¶ 13.

In June 2011, defendant's representative placed a phone call to plaintiff, which was answered by her husband. Karl Bliese Affidavit, Opp'n at Ex. A ("Karl Bliese Affidavit") ¶¶ 2–3. In the course of that conversation, defendant's representative "threatened to file a lawsuit against plaintiff" and to "garnish Plaintiff's wages if the debt was not paid." *Id.* ¶¶ 3–5; *see also* Reply at 2, 4. Plaintiff's husband "immediately related these threats to plaintiff." Karl Bliese Affidavit ¶ 7. At the time of the call, defendant did not have a court judgment against plaintiff that would enable it to begin garnishing her wages. *Id.* ¶ 6. But defendant believed it had the authority to initiate litigation against plaintiff. Burke Decl. ¶¶ 11, 17. Defendant's representative "demanded that Plaintiff's husband submit a financial statement form," Karl Bliese Affidavit ¶ 8, which, after some back and forth, he did around July 1, 2011. Burke Decl. ¶¶ 18–24.

Defendant has submitted evidence, which plaintiff has not controverted, that CBU president Melissa Burke reviewed plaintiff's case to assess whether litigation should be initiated, and that by the time of the June 7, 2011 phone call, she had approved litigation. Burke Decl. ¶ 17; *see also id.* Ex. B. On March 9, 2011, the "collector handling [plaintiff's] account" submitted an "Attorney Reference Form" to the president for a decision on whether to file a lawsuit. Burke Decl. ¶¶ 14–15; *id.* Ex. B. At some point prior to the June 7, 2011 phone call, she "reviewed the Attorney Reference Form and determined that a lawsuit was appropriate, if voluntary payment could not be secured." Burke Decl. ¶ 17. Once litigation is approved, defendant's policy is to "try once again to secure a payment plan" to avoid incurring litigation costs that would be passed on to the debtor. *Id.* ¶ 5.

After reviewing plaintiff's husband's "financial statement form," defendant's representative demanded a payment of $1500 per month from plaintiff towards the debt. Karl Bliese Affidavit ¶ 9. Plaintiff's husband called defendant on July 8, 2011 "and indicated he would call back next week to set

2

up auto-payments." Burke Decl. ¶ 26. As a result of defendant's threat of litigation, plaintiff and her husband hired an attorney on July 15, 2011. Karl Bliese Affidavit ¶ 10. With the exception of one unanswered phone call and voicemail left by defendant's representative on August 30, 2011, the parties had no more contact until this lawsuit was served on defendant on September 2, 2011. Burke Decl. ¶¶ 25–28. Defendant stopped pursuing litigation when plaintiff served it with the complaint, and "attempted to resolve the debt . . . in conjunction with resolving the lawsuit filed by Mrs. Bliese." *Id.* ¶ 28. The Defendant submitted that its president, Ms. Burke, has concluded that the controversy before this Court "will not result in a payment arrangement on the debt." *Id.* ¶ 30. As a result, in February 2013 defendant filed a lawsuit against plaintiff for recovery of the debt in Superior Court. *See id.*; Karl Bliese Affidavit ¶ 11.

Plaintiff filed her initial complaint on August 22, 2011 stating violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* for:

> [E]ngaging in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiff; . . . causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff; . . . threatening to garnish Plaintiff's wages if Plaintiff did not pay the alleged debt; and . . . threatening to file a lawsuit against Plaintiff even though Defendant does not intend to do so.

Complaint ¶ 15. Plaintiff also alleged claims under California's equivalent, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*, for causing plaintiff's phone to ring repeatedly, calling with unreasonable frequency, "falsely representing that a legal proceeding is about to be instituted" against plaintiff, and continuously failing to comply with the FDCPA's requirements. *Id.* ¶ 20. Plaintiff filed an amended complaint on March 29, 2013, dropping her claims of repeated calling and harassment under both the FDCPA and RFDCPA, leaving her claims that defendant misrepresented and deceived plaintiff by its threat to garnish her wages and to file a lawsuit against her. *See* Amended Complaint ¶¶ 20–28.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

3

56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1.    Litigation Threat**

Plaintiff's first claim is for "threatening to file a lawsuit against Plaintiff even though Defendant did not intend to do so," in violation of FDCPA § 1692e(5). Section 1692e(5) prohibits a debt collector from using, in collecting a debt, "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." Defendant argues that plaintiff has not presented any evidence or arguments to overcome the affirmative evidence it submitted, which shows that it had the authority to file a lawsuit against plaintiff and that it intended to do so before the June 7, 2011 phone call. Plaintiff argues that defendant's delay in waiting until February 2013 to file suit creates a genuine dispute of material fact as to whether defendant intended to sue plaintiff. Plaintiff also argues that the fact she was deceived "into believing that legal proceedings were imminent, as she felt the need to hire an attorney soon after

4

the threats were made," creates a dispute as to whether "an unsophisticated consumer" would "falsely believ[e] that litigation was imminent." Opp'n at 15.

First, the evidence submitted by defendant refutes any assertion of falsity as to defendant's intent to undertake litigation. Plaintiff does not attack or rebut defendant's evidence that prior to the communications at issue, it asked for and received approval to litigate against her, and that it planned to do so if the outcome of speaking with her was not satisfactory. Instead, plaintiff asks the Court to rely on *Drennan v. Van Ru Credit Corp.*, 950 F. Supp. 858, 861 (N.D. Ill. 1996), where the district court inferred a lack of intent to litigate from periods of inaction of nine months and one year. *Drennan* involved a motion to dismiss where the parties had not submitted other evidence. *Id.* Here, the parties have submitted evidence on the motion for summary judgment, and that evidence rebuts any inference that may come from defendant's inaction here. Moreover, here defendant asserts – and plaintiff does not dispute – that during the supposed "more than 20 month" delay plaintiff alleges, the parties were actually negotiating a payment plan and defendant apparently gave plaintiff a break because of an ill family member. *See* Opp'n at 14. Thus, far from inaction as in *Drennan*, here the parties were actively working to resolve the dispute during the delay in pursuing litigation.

Plaintiff's second argument -- that, given her status as an unsophisticated consumer, her perception of defendant's statements is a question of fact for a jury – is also unavailing. The Ninth Circuit has made clear that it is the court, not the jury, which determines whether statements give rise to debt collector liability. *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). Thus, plaintiff's subjective perception of CBU's intent is of no moment. Moreover, as discussed, plaintiff's subjective view that she was "misled" into believing litigation was imminent has been rebutted; defendant has offered evidence that litigation *was in fact* imminent.

As plaintiff has failed to rebut or contradict defendant's evidence that it had the ability and intent to sue prior to the June 7, 2011 conversation, the Court grants summary judgment to defendant on plaintiff's § 1692e(5) cause of action for threatening to litigate.[1]

---

[1] As plaintiff concedes, RFDCPA section 1788.13(j) mirrors the standard of liability found in FDCPA § 1692e(5). *See McEndree v. Rash Curtis & Assoc.*, No. 2:10-cv-01079-MCE-JFM, 2012 WL 1640465, at *7–8 (E.D. Cal. May 9, 2012); *Taylor v. Pinnacle Credit Servs., LLC*, C-10-05164 JCS, 2011 WL 1303430, at *2 n.2 (N.D. Cal. Apr. 4, 2011) (accepting parties' stipulation that result under

5

### 2. Garnishment Threat

Plaintiff also claims that defendant violated FDCPA § 1692e(4) by threatening to garnish her wages when it did not have the legal authority to do so. FDCPA § 1692e(4) prohibits a debt collector from representing or implying that "nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." Plaintiff argues that defendant cannot legally threaten garnishment until after it has obtained a judgment against plaintiff. The Court disagrees. As a logical matter, the threat to garnish wages would have little effect if it could only be made once the debt collector had already taken the legal action to begin garnishing a debtor's wages. As long as garnishment is an available legal remedy, the threat of garnishment under the FDCPA is lawful regardless of whether judgment has already been obtained.

Courts considering this question have consistently found it lawful for a debt collector to threaten garnishment or other remedies that it can legally pursue, even prior to obtaining a judgment. *See Vasquez v. State Recovery Sys., Inc.*, No. 2:11-cv-1609-GEB-EFB, 2011 WL 6012326, at *1 (E.D. Cal. Dec. 1, 2011) (dismissing claim that defendant could not threaten garnishment because it did not have a valid judgment as conclusory, suggesting that garnishment is a "lawful" step under § 1692e(4) even before defendant obtains a judgment); *Gostony v. Diem Corp.*, 320 F. Supp. 2d 932, 941 (D. Ariz. 2003) (finding that threat of possible lawsuit or garnishment did not create impression that defendant could do so "without having first obtained a judgment"); *Shuler v. Ingram & Assoc.*, 710 F. Supp. 2d 1213, 1224–25 (N.D. Ala. 2010) (finding statements that the defendant "may place a lien on plaintiff's property, garnish [plaintiff's] wages, that [defendant] prosecutes debts like his, and always wins" not in violation of § 1692e(4) because they "place[] plaintiffs on notice of options legally available to" the defendant); *Sparks v. Phillips & Cohen Assoc., Ltd.*, 641 F. Supp. 2d 1234, 1249 (S.D. Ala. 2008) ("Merely advising the debtor of the agency's options with which to pursue the debt is the sort of truism that is legally insufficient to violate 1692e."). Moreover, the case offered by plaintiff, *Skinner v. Green*

---

RFDCPA was identical to FDCPA, dismissing claims under FDCPA analysis). Section 1788.13(j) prohibits "[t]he false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made; . . . ." Cal. Civ. Code § 1788.13(j). Thus, the Court also grants judgment in favor of defendant on plaintiff's section 1788.13(j) cause of action.

*Tree Servicing, LLC,* No. 3:12-cv-03834-JCS, 2012 WL 6554530, at *8 (N.D. Cal. Dec. 14, 2012), does not support plaintiff's proposition that threatening garnishment requires a debt collector to first have judgment. Instead, the court in *Skinner* barred the debt collector from threatening garnishment where garnishment was not a remedy lawfully available to a lender seeking to recover on a mortgage for a home that was already foreclosed upon. *See id.* Here there is no dispute that garnishment is a legal remedy available to recover on plaintiff's debt.

In the face of the evidence submitted and the available legal authority, the Court declines to adopt plaintiff's contrary view of the law. Accordingly, the Court grants judgment to defendant on plaintiff's § 1692e(4) cause of action.[2]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 18, 2013

SUSAN ILLSTON
United States District Judge

---

[2] Plaintiff's remaining RFDCPA cause of action, section 1788.17, relies on liability under the FDCPA. It provides: "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ. Code § 1788.17. As the Court has granted judgment to defendant on both of plaintiff's FDCPA causes of action, judgment is therefore also granted to defendant on plaintiff's cause of action under RFDCPA section 1788.17.